McGEE, Chief Judge.
 

 *271
 
 The North Carolina Department of Public Safety ("Respondent") appeals from a final decision of the Office of Administrative Hearings ("OAH") concluding as a matter of law that Respondent lacked just cause to dismiss Randall Cole ("Petitioner") from his position as a laundry plant manager, and ordering that he be retroactively reinstated but demoted. We conclude Respondent had just cause to dismiss Petitioner and, therefore, reverse the final decision of OAH.
 

 I.
 
 Background
 

 Petitioner worked for Respondent as an assistant director of the Craggy Laundry facility from November 2003 until his promotion to the position of plant manager in December 2010. Upon his promotion to plant manager, a change of command audit ("the audit") was performed by Respondent. The audit is performed each time a new plant manager is hired, and serves as a "report of the condition of that particular facility under the prior management." The audit revealed that improvement was needed in some areas of the laundry facility, and "significant improvement" was needed in others. Petitioner's direct supervisor, Ronald Young ("Young"), discussed the results of the audit with Petitioner at a 3 February 2011 meeting. Due to the magnitude of the problems, "Petitioner was told that a follow-up audit would be conducted to verify corrective action was implemented."
 

 Young sent an email to Petitioner on 1 March 2011 reminding him that the problems that were found in the audit needed to be rectified. Although the problems had not been corrected by that time, Petitioner responded to Young and indicated that all of the issues had been corrected. The promised follow-up audit was conducted on 7 June 2011, and found that some of the issues identified in the audit had not been corrected. Due to these deficiencies, an unsatisfactory rating was entered into Petitioner's employee appraisal, known as the appraisal process ("TAP") for July 2011. An "employee action plan" was issued to Petitioner on 24 August 2011, that directed him to correct "all violations set forth in [the audit]."
 

 *272
 
 Sometime in November 2011, Young documented in Petitioner's TAP that Petitioner had abated all of the audit violations identified in the 24 August 2011 employee action plan. The TAP stated in the "performance log" that "[a]ll violations noted in [the audit] have abated." Despite this notation in Petitioner's TAP, Petitioner in fact had not abated all of the issues in the audit, and was issued a written warning for unsatisfactory job performance on 15 December 2011 (the "first written warning") for "not satisfactorily implementing or correcting actions prescribed on [the] action plan" issued 24 August 2011. The first written warning alerted Petitioner that he might "be subject to further discipline up to and including dismissal" if the problems were not corrected.
 

 As a part of Petitioner's promotion to plant manager, Petitioner was required to become certified as a Laundry Manager under the Association of Linen Management Program. Petitioner was aware of this requirement, and the requirement was documented in his work plans in 2010, 2011, and 2012. Petitioner was also issued an action plan on 21 December 2012 that gave him until 31 January 2013 to obtain the certification. Despite the deadline being extended at least twice, Petitioner failed to obtain the required certification, and was issued another written warning on 20 March 2013 (the "second written warning").
 
 [1]
 

 *711
 
 The second written warning notified Petitioner that if he failed to achieve his certification by 20 April 2013,
 
 [2]
 
 he would "receive further disciplinary action up to and including dismissal."
 

 As a part of Petitioner's job responsibilities as plant manager, he was required to reconcile receipts and send the information and invoices to a central office in Raleigh for payment. Petitioner was not fulfilling this job requirement and, in July 2013, Young reached out to Petitioner to inquire why the receipts and invoices were not being properly forwarded. Petitioner told Young that he would complete this task; however, he never did. As a result, Petitioner received a written warning for unsatisfactory job performance related to his failure to perform this task, as well as his failure to correct issues found in an audit conducted
 
 *273
 
 15 August 2013 (the "third written warning"). The third written warning advised Petitioner that he was expected to take "immediate corrective measures" or be subjected to "further disciplinary action up to and including dismissal." Shortly after the third written warning was issued, a semi-annual safety inspection of the Craggy Laundry Facility was conducted and several violations were found, including failures to maintain safety reports and properly train staff on safety programs.
 

 Karen Brown, the Director of Correction Enterprises and Young's direct supervisor, "felt disciplinary action was warranted because of Plaintiff's continued unsatisfactory job performance," and a pre-disciplinary conference was held with Petitioner. Following this conference, Petitioner was dismissed from his position for unsatisfactory job performance. Following his dismissal, Petitioner utilized Respondent's internal appeal procedure, and a final agency decision affirmed his dismissal. Petitioner filed a petition for a contested case hearing with OAH on 3 April 2014, alleging he was dismissed from his position of employment without just cause. Petitioner voluntarily dismissed his petition 144 days later, on 25 August 2014. More than eleven months later, on 12 August 2015, Petitioner filed a second petition for a contested case hearing.
 

 Respondent filed a motion to dismiss the second petition, arguing that N.C. Gen. Stat. § 1A-1, Rule 41(a)(1) is inapplicable to OAH proceedings and, therefore, a petition for a contested case hearing may not be voluntarily dismissed and refiled within one year. The Administrative Law Judge ("ALJ") assigned to the case ruled that " Rule 41 of the N.C. Rules of Civil Procedure applies to contested cases heard by [OAH]," and denied Respondent's motion. The ALJ held a hearing on the merits of Petitioner's claims. Following that hearing, the ALJ issued a final decision concluding as a matter of law that "[a]lthough just cause existed for terminating Petitioner, Respondent failed to meet its burden of proof that it did not act erroneously or fail to use proper procedure" in terminating Petitioner from his employment "because Petitioner did not have two active warnings at the time he was disciplined and terminated." According to the final decision, Respondent lacked just cause to terminate Petitioner but had "sufficiently proven that it had just cause to demote Petitioner based on his unsatisfactory job performance." Therefore, the ALJ ordered Petitioner retroactively reinstated but demoted to the position of assistant manager. Respondent appeals.
 

 II.
 
 Analysis
 

 Respondent argues the ALJ erred by: (1) denying Respondent's motion to dismiss and concluding that N.C.G.S. § 1A-1, Rule 41(a)(1)
 

 *274
 
 applies to proceedings before OAH; (2) entering several findings of fact that were not supported by substantial evidence in the record; (3) concluding that Respondent lacked just cause to dismiss Petitioner for unsatisfactory job performance; and (4) imposing a lesser form of discipline rather than remanding the case to the employing agency to impose a new form of discipline.
 

 A.
 
 Applicability of N.C.G.S. § 1A-1, Rule 41(a)(1) to OAH Proceedings
 

 Respondent first argues the trial court erred in denying its motion to dismiss Petitioner's second contested case petition. We review this argument
 
 de novo
 
 .
 

 *712
 

 Dion v. Batten
 
 , --- N.C.App. ----, ----,
 
 790 S.E.2d 844
 
 , 851 (2016) (noting that this Court reviews issues of statutory interpretation
 
 de novo
 
 ). Respondent contends that N.C.G.S. § 1A-1, Rule 41(a)(1), that permits a voluntarily dismissed claim to be refiled within one year of such dismissal, does not apply to cases before OAH. We disagree. N.C.G.S. § 1A-1, Rule 41(a)(1) provides, in relevant part:
 

 Subject to the provisions of Rule 23(c) and of any statute of this State, an action or any claim therein may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before the plaintiff rests his case[.] ... Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice[.] ... If an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced within one year after such dismissal unless a stipulation filed under (ii) of this subsection shall specify a shorter time.
 

 N.C. Gen. Stat. § 1A-1, Rule 41(a)(1) (2015). We begin with the assumption that the Rules of Civil Procedure apply to contested case hearings as they do in the trial courts, unless a statute or administrative rule dictates otherwise: "The Rules of Civil Procedure as contained in G.S. 1A-1 ...
 
 shall apply
 
 in contested cases in the Office of Administrative Hearings (OAH) unless another specific statute or rule of the Office of Administrative Hearings provides otherwise." 26 NCAC 03 .0101(a) (2015) (emphasis added). Cases from this Court have interpreted N.C.G.S. § 1A-1, Rule 41(b) as applying to contested case hearings before OAH.
 
 See
 

 Scott v. N.C. Dep't of Crime Control & Pub. Safety
 
 ,
 
 222 N.C.App. 125
 
 ,
 
 730 S.E.2d 806
 
 (2012) ;
 
 Lincoln v. N.C. Dep't of Health & Human Servs.
 
 ,
 
 172 N.C.App 567
 
 ,
 
 616 S.E.2d 622
 
 (2005).
 

 *275
 
 Respondent contends that N.C.G.S. § 1A-1, Rule 41(a)(1) is inapplicable to contested case proceedings because it permits "an action" to be dismissed and refiled by a plaintiff within one year. Since a contested case petition is not "an action" as defined in our General Statutes,
 
 [3]
 
 Respondent reasons, N.C.G.S. § 1A-1, Rule 41(a)(1) cannot apply to contested case hearings. This assertion directly contradicts both
 
 Scott
 
 and
 
 Lincoln
 
 , each of which applied N.C. Gen. Stat. § 1A-1, Rule 41(b) to contested case hearings despite that portion of the rule also referring to the dismissal of "an action."
 
 Scott
 
 ,
 
 222 N.C.App. at
 
 131 n.7,
 
 730 S.E.2d at
 
 810 n.7 ;
 
 Lincoln
 
 ,
 
 172 N.C.App. at 572-73
 
 ,
 
 616 S.E.2d at 626
 
 .
 

 Our General Assembly has empowered OAH with "such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes for which" OAH was created and, by statute, allowed the Chief Administrative Law Judge of OAH to "adopt rules to implement the conferred powers and duties." N.C. Gen. Stat. §§ 7A-750, 7A-751(a) (2015). Under this authority, OAH promulgated 26 NCAC 03 .0101(a), which provides that the rules of civil procedure, including N.C.G.S. § 1A-1, Rule 41(a)(1) "shall apply" in contested cases in the Office of Administrative Hearings "unless another specific statute or rule provides otherwise." 26 NCAC 03 .0101(a). Respondent's interpretation would render any rule of civil procedure that refers to "an action" as inapplicable to contested case hearings before OAH, which uses the term "contested case." Given 26 NCAC 03 .0101(a) 's expansive command that the rules of civil procedure "shall apply" in contested case proceedings unless another rule or statute directs otherwise, and previous interpretation of N.C.G.S. § 1A-1, Rule 41(b) in
 
 Scott
 
 and
 
 Lincoln
 
 , we reject Respondent's reading of N.C.G.S. § 1A-1, Rule 41(a)(1).
 

 Respondent also contends that
 
 N.C. Gen. Stat. § 126-34.02
 
 mandates OAH issue a final decision within 180 days "from the commencement of the case" and thereby renders Rule 41(a)(1) inapplicable. We disagree. N.C.G.S. § 126-34.02, as relevant to this argument, provides:
 

 Once a final agency decision has been issued in accordance with G.S. 126-34.01, an applicant for State employment, a State employee, or former State employee may file a contested case in the Office of Administrative
 
 *713
 
 Hearings
 
 *276
 
 under Article 3 of Chapter 150B of the General Statutes. The contested case must be filed within 30 days of receipt of the final agency decision. Except for cases of extraordinary cause shown, the Office of Administrative Hearings shall hear and issue a final decision in accordance with G.S. 150B-34 within 180 days from the commencement of the case.
 

 N.C. Gen. Stat. § 126-34.02
 
 (a) (2015). The 180-day mandate in N.C.G.S. § 126-34.02 does not conflict with a petitioner's ability to voluntarily dismiss a case and refile it within one year as permitted by N.C.G.S. § 1A-1, Rule 41(a)(1). Our Supreme Court has held that "[t]he effect of a judgment of voluntary dismissal [pursuant to N.C.G.S. § 1A-1, Rule 41(a) ] is to leave the plaintiff exactly where he or she was before the action was commenced."
 
 Brisson v. Santoriello
 
 ,
 
 351 N.C. 589
 
 , 593,
 
 528 S.E.2d 568
 
 , 570 (2000) (citations, quotation marks, and brackets omitted). "If the action was originally commenced within the period of the applicable statute of limitations, it may be recommenced within one year after the dismissal, even though the base period may have expired in the interim."
 
 Id.
 
 at 394,
 
 528 S.E.2d at 571
 
 (citations omitted).
 

 Once a voluntary dismissal has been taken pursuant to N.C.G.S. § 1A-1, Rule 41(a)(1), the petitioner has "terminated the action, leaving nothing in dispute[.]"
 
 Teague v. Randolph Surgical Assocs., P.A.
 
 ,
 
 129 N.C.App. 766
 
 , 773,
 
 501 S.E.2d 382
 
 , 387 (1998). In the present case, the original action was commenced on 3 April 2014 when Petitioner filed a petition for contested case hearing. The petition was filed by Petitioner within thirty days of his receipt of the final agency decision in accordance with N.C.G.S. § 126-34.02. Before any decision was reached by OAH, Petitioner dismissed his claim without prejudice pursuant to N.C.G.S. § 1A-1, Rule 41(a)(1). At that time, the original contested case petition had been "terminated," leaving nothing in dispute and nothing for OAH to rule on within 180 days.
 
 See
 

 Brisson
 
 ,
 
 351 N.C. at 593
 
 ,
 
 528 S.E.2d at 570
 
 (noting that "[a] Rule 41(a) dismissal strips the trial court of authority to enter further orders in the case, except" pursuant to Rule 41(d) in instances not relevant here). Petitioner's voluntary dismissal left him "exactly where he ... was before [the contested case petition] was commenced," and allowed Petitioner to recommence his case "within one year after the dismissal, even though the base period ... expired in the interim."
 

 Id.
 

 (citations omitted).
 

 Pursuant to 26 NCAC 03 .0101(a), the North Carolina Rules of Civil Procedure "shall apply" in contested cases before OAH unless a "specific" statute or regulation provides otherwise. In the present case,
 
 *277
 
 having found no specific statute or rule that provides to the contrary, we hold N.C.G.S. § 1A-1, Rule 41(a)(1) applies to contested cases before OAH, and the ALJ therefore properly denied Respondent's motion to dismiss.
 

 B.
 
 Challenged Findings of Fact
 

 Respondent challenges findings of fact 6, 25, 27, 36, 39, and 41 made by the ALJ. All findings of fact that are not challenged are deemed to be conclusively established on appeal.
 
 Blackburn
 
 , --- N.C.App. at ----, 784 S.E.2d at 519 (citing
 
 Koufman v. Koufman
 
 ,
 
 330 N.C. 93
 
 , 97,
 
 408 S.E.2d 729
 
 , 731 (1991) ). After carefully reviewing the record and the ALJ's final decision, we conclude that the challenged findings are either not material to our decision in this case, or are more properly labeled conclusions of law. The unchallenged findings are sufficient to show that Respondent had just cause to dismiss Petitioner for unsatisfactory job performance.
 
 See
 

 Blackburn
 
 , --- N.C.App. ----, 784 S.E.2d at 519 (concluding that "it is not necessary for us to assess the evidentiary support for all of the findings challenged by" the appealing party). Therefore, we examine whether the unchallenged findings of fact supported Respondent's dismissal of Petitioner.
 

 C.
 
 Just Cause to Dismiss Petitioner for Unsatisfactory Job Performance
 

 Respondent argues the ALJ erred in concluding it lacked just cause to terminate Petitioner for unsatisfactory job performance. Respondent also contends that all of Petitioner's written warnings were "active" at the time of Petitioner's termination and, in the alternative, the plain language of 25 NCAC 01J .0605(b) does not mandate that the prior disciplinary actions be "active" to
 
 *714
 
 count toward the number needed before dismissal is permitted under the North Carolina Administrative Code ("the Administrative Code"). We review
 
 de novo
 
 whether just cause existed for Petitioner's termination.
 
 See
 

 N.C. Dep't of Env't & Natural Res. v. Carroll
 
 ,
 
 358 N.C. 649
 
 , 666-67,
 
 599 S.E.2d 888
 
 , 898 (2004).
 

 A career state employee subject to the North Carolina Human Resources Act may only be "discharged, suspended, or demoted for disciplinary reasons" upon a showing of "just cause."
 
 N.C. Gen. Stat. § 126-35
 
 (a) (2015). Pursuant to the Administrative Code, "just cause" for the dismissal, suspension, or demotion of a career state employee may be established only on a showing of "unsatisfactory job performance, including grossly inefficient job performance," or "unacceptable personal conduct." 25 NCAC 01J .0604 (2015).
 

 *278
 
 Unsatisfactory job performance is defined as "work-related performance that fails to satisfactorily meet job requirements as specified in the relevant job description, work plan, or as directed by the management of the work unit or agency." 25 NCAC 01J .0614(9) (2015). The Administrative Code sets out the requirements for a career state employee to be dismissed for unsatisfactory job performance:
 

 In order to be dismissed for a current incident of unsatisfactory job performance an employee must first receive at least two prior disciplinary actions: First, one or more written warnings followed by a warning or other disciplinary action which notifies the employee that failure to make the required performance improvements may result in dismissal.
 

 25 NCAC 01J .0605(b) (2015). "Statutory interpretation properly begins with an examination of the plain words of the statute."
 
 Correll v. Division of Social Services
 
 ,
 
 332 N.C. 141
 
 , 144,
 
 418 S.E.2d 232
 
 , 235 (1992) (citation omitted). "When the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning."
 
 Lemons v. Old Hickory Council
 
 ,
 
 322 N.C. 271
 
 , 276,
 
 367 S.E.2d 655
 
 , 658 (1988) (citations omitted);
 
 see also
 

 State v. Wiggins
 
 ,
 
 272 N.C. 147
 
 , 153,
 
 158 S.E.2d 37
 
 , 42 (1967) ("It is elementary that in the construction of a statute words are to be given their plain and ordinary meaning unless the context, or the history of the statute, requires otherwise." (citation omitted)).
 

 We are cognizant that this case requires us to interpret the meaning of an administrative regulation, not a statute. However, "[o]ur Supreme Court has applied the rules of statutory construction to administrative regulations as well as statutes."
 
 Kyle v. Holston Group
 
 ,
 
 188 N.C.App. 686
 
 , 692,
 
 656 S.E.2d 667
 
 , 672 (2008) (citations omitted). Therefore, we employ the above rules of statutory construction to the administrative regulation at issue.
 

 Considering and applying the plain and unambiguous text of 25 NCAC 01J .0605(b) appears to present a straightforward answer to this case. The Administrative Code provision requires that, in order to be dismissed for a current incident of unsatisfactory job performance, an employee must have received two prior disciplinary actions, including a written warning and a warning or notification that failure to make the required improvements may result in dismissal.
 
 See
 
 25 NCAC 01J .0605(b). In the present case, Petitioner received his first written warning on 15 December 2011, and a second written warning on 20 March
 
 *279
 
 2013. Both written warnings advised Petitioner that failure to make the required performance improvements-correcting the problems found in the audit and receiving a laundry manager certification, respectively-might result in further disciplinary action, including his dismissal.
 

 Petitioner then received a third written warning on 24 September 2013, because he failed to correct deficiencies found in the 15 August 2013 audit. The third written warning, like the first and second, warned Petitioner that "if his [u]nsatisfactory [j]ob [p]erformance continued, it might result in further disciplinary action up to and including dismissal[.]" Petitioner was ultimately terminated due to his failure to correct the deficiencies found in the third written warning, which served as the "current incident of unsatisfactory job performance." 25 NCAC 01J .0605(b). Therefore, the requirements of 25 NCAC 01J .0605(b) were met, and Respondent
 
 *715
 
 had just cause to terminate Petitioner for unacceptable personal conduct.
 

 Petitioner maintained, and the ALJ ultimately concluded, that this application of 25 NCAC 01J .0605(b) to the facts of the present case was complicated by the existence of 25 NCAC 01J .0614(6). Found in the definitional section of the relevant subchapter of the administrative code, 25 NCAC 01J .0614(6) provides:
 

 As used in this Subchapter
 
 :
 

 ....
 

 (6) Inactive Disciplinary Action means any disciplinary action issued after October 1, 1995 is deemed inactive for the purpose of this Section if:
 

 (a) the manager or supervisor notes in the employee's personnel file that the reason for the disciplinary action has been resolved or corrected;
 

 (b) the purpose for a performance-based disciplinary action has been achieved, as evidenced by a summary performance rating of level 3 (Good) or other official designation of performance at an acceptable level or better and at least a level 3 or better in the performance area cited in the warning or disciplinary action, following the disciplinary warning or action; or
 

 (c) 18 months have passed since the warning or disciplinary action, the employee does not have
 
 *280
 
 another active warning or disciplinary action which occurred within the last 18 months.
 

 25 NCAC 01J .0604(6) (2015) (emphases added). The ALJ concluded as a matter of law that, because the definitional section defined "inactive disciplinary action," it is "only logical" that the two prior disciplinary actions required by 25 NCAC 01J .0605(b) must be active. "To hold to the contrary," the ALJ concluded, "means the entire process of finding a prior discipline inactive has no applicability or effect; i.e., a meaningless exercise in futility."
 
 [4]
 

 We cannot subscribe to this reading of 25 NCAC 01J .0604(6) 's effect on 25 NCAC 01J .0605(b). By its terms, 25 NCAC 01J .0604(6) states that the definition of "Inactive Disciplinary Action" is operable only "[a]s used in" Subchapter J of Title 25 of the North Carolina Administrative Code. 25 NCAC 01J .0604(6) does not mandate that courts and ALJs make a finding that a prior disciplinary action is inactive, but only instructs that when the term "inactive disciplinary action" is used in Subchapter J of Title 25 of the Administrative Code, it has the meaning given to it by 25 NCAC 01J .0604(6). While 25 NCAC 01J .0605(b) is located in Subchapter J of Title 25, it does not use the phrase "inactive disciplinary action," nor require that a disciplinary action be "active"-or not "inactive"-before it can be used as a "prior disciplinary action[ ]" to justify a career state employee's dismissal for unsatisfactory job performance.
 
 See
 
 25 NCAC 01J .0605(b).
 

 In order to affirm the ALJ's reading of the Administrative Code, we would need to insert a requirement into 25 NCAC 01J .0605(b) that the "two prior disciplinary actions" not be "inactive." Such a requirement is clearly not contained in 25 NCAC 01J .0605(b). While the code drafters certainly
 
 could
 
 have required that the written warnings not be "inactive" in order for them to count towards the "two prior disciplinary actions" needed before a career state employee can be dismissed, they did not.
 

 *281
 
 We will not read a new requirement-that a warning not be "inactive"-into the code section at issue when such a requirement is not contained in the administrative regulation's clear and ambiguous text.
 
 See
 

 *716
 

 State v. Singletary
 
 , --- N.C.App. ----, ----,
 
 786 S.E.2d 712
 
 , 725 (2016) (rejecting a litigant's "extratextual interpretation" of a statute when such a "textual substitution" would be "contrary to the clear statutory mandate").
 

 A plain reading of 25 NCAC 01J .0605(b) requires that a career state employee must have received "at least two prior disciplinary actions" before being subject to dismissal for a third disciplinary action. In the present case, it is not contested that Petitioner had received two disciplinary actions prior to the "current incident" which led to his dismissal. Each of the three written warnings advised Petitioner that he was subject to further discipline, up to and including dismissal from employment, if the deficiencies were not corrected. This met the requirements of 25 NCAC 01J .0605(b), and Respondent therefore had just cause to dismiss Petitioner from his position as plant manager.
 

 The ALJ declined to reach the holding we reach today, reasoning that it would leave 25 NCAC 01J .0614(6) 's definition of inactive disciplinary action "meaningless." While the term inactive disciplinary action is currently inoperable because it is not used in Subchapter J of Title 25 of the Administrative Code, this does not foreclose future amendments to that section of the Administrative Code to give use to the term. We decline to make that amendment through judicial interpretation, and will not read a requirement into an administrative regulation that it plainly does not contain in order to make use of an otherwise inoperable definitional term. Having found the requirements of 25 NCAC 01J .0605(b) met, we hold that Respondent had just cause to dismiss Petitioner for unsatisfactory job performance, and the ALJ erred in reversing Respondent's dismissal. We therefore reverse the final decision of OAH.
 

 REVERSED.
 

 Judges DIETZ and TYSON concur.
 

 [1]
 

 The second written warning was issued for "grossly inefficient job performance" rather than unsatisfactory job performance. While Petitioner's conduct that led to the second written warning did not constitute grossly inefficient job performance, as the ALJ noted, "no disciplinary action shall be invalid solely because the disciplinary action is labeled incorrectly." 25 NCAC 01J .0604(c). Like the ALJ, we treat the second written warning as an instance of unsatisfactory job performance.
 

 [2]
 

 Petitioner did, eventually, receive the certification, but did so by July 2013, months after the 20 April 2013 deadline had passed.
 

 [3]
 

 N.C. Gen. Stat. § 1-2
 
 provides: "An action is an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment or prevention of a public offense."
 

 [4]
 

 The ALJ also noted that the North Carolina State Human Resources Manual ("the Manual") advises that "[a] disciplinary action ... becomes inactive, i.e. cannot be counted towards the number of prior disciplinary actions that must be received before further action can be taken ... when" any of the three circumstances outlined in 25 NCAC 01J .0604(6)(a)-(c) have been satisfied. However, as the ALJ recognized, the Manual has not been promulgated as a formal rule, and is not controlling. This Court has recognized that properly promulgated statutes and administrative regulations-and not a manual-are controlling in similar circumstances.
 
 See
 

 Estate of Joyner v. N.C. Dep't of Health & Human Servs.
 
 ,
 
 214 N.C.App. 278
 
 , 288-89,
 
 715 S.E.2d 498
 
 , 506 (2011) (holding that the North Carolina Adult Medicaid Manual "merely explains the definitions that currently exist" in statutes, rules, and regulations).