IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-197

Filed 16 January 2024

Rutherford County, No. 22 CVS 38

JEAN HILL and JAMES HILL, Petitioners,

v.

THE DIVISION OF SOCIAL SERVICES AND THE DIVISION OF HEALTH BENEFITS OF THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondents.

Appeal by petitioners from order entered 7 October 2022 by Judge J. Thomas Davis in Rutherford County Superior Court. Heard in the Court of Appeals 3 October 2023.

*Ott Cone & Redpath, P.A., by Stephen J. White, for petitioners-appellants.*

*Attorney General Joshua H. Stein, by Assistant Attorney General Chris D. Agosto Carreiro and Assistant Attorney General Adrian W. Dellinger, for the State.*

ZACHARY, Judge.

This case concerns a single issue of law: whether great-aunts and great-uncles were included within the definition of "caretaker relatives" under the North Carolina State Medicaid Plan prior to 1 May 2022. Petitioners Jean and James Hill ("the Hills") appeal from the superior court's order affirming the ruling by Respondent North Carolina Department of Health and Human Services ("DHHS"), which approved the Hills for Family Planning Medicaid benefits rather than retroactive and ongoing full

Medicaid benefits covering the medical expenses that they incurred during their period of caring for their great-niece. After careful review, we affirm.

## I.    Background

At the outset, the Hills acknowledge that "[t]his appeal does not raise any substantive disputes concerning the material facts." We therefore need only recite the legal and procedural facts pertinent to our analysis.

### A. Medicaid

"The Medicaid program was established by Congress in 1965 to provide federal assistance to states which chose to pay for some of the medical costs for the needy." *Correll v. Div. of Soc. Servs.*, 332 N.C. 141, 143, 418 S.E.2d 232, 234 (1992). "Whether a state participates in the program is entirely optional. However, once an election is made to participate, the state must comply with the requirements of federal law." *Id.* (cleaned up). In essence, "Medicaid offers the States a bargain: Congress provides federal funds in exchange for the States' agreement to spend them in accordance with congressionally imposed conditions." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 323, 191 L. Ed. 2d 471, 476 (2015).

"The federal and state governments share the cost of Medicaid, but each state government administers its own Medicaid plan. State Medicaid plans must, however, comply with applicable federal law and regulations." *N.C. Dep't of Health & Hum. Servs. v. Parker Home Care, LLC*, 246 N.C. App. 551, 556, 784 S.E.2d 552, 556, *disc. review denied*, 369 N.C. 183, 793 S.E.2d 690 (2016) (citation omitted); *see also* 42

U.S.C. § 1396c. "Within broad Federal rules, each State decides eligible groups, types and range of services, payment levels for services, and administrative and operating procedures." 42 C.F.R. § 430.0 (2022). A "State plan" is "a comprehensive written commitment by a Medicaid agency, submitted under [42 U.S.C. § 1396a], to administer or supervise the administration of a Medicaid program in accordance with Federal requirements." *Id.* § 400.203.

"North Carolina's Medicaid plan describes the nature and scope of its Medicaid program and gives assurance that it will be administered in conformity with specific federal statutory requirements and other applicable official issuances of the federal Department of Health and Human Services." *Martin v. N.C. Dep't of Health & Hum. Servs.*, 194 N.C. App. 716, 720, 670 S.E.2d 629, 633 (2009). State Medicaid Plans and State Plan Amendments approved by the Centers for Medicare and Medicaid Services ("CMS") "have the force and effect of rules adopted pursuant to Article 2A of Chapter 150B of the General Statutes." N.C. Gen. Stat. § 108A-54.1B(d) (2021).

**B. "Caretaker Relative" Status**

CMS has promulgated a regulation defining "caretaker relative," a category of individuals who may be eligible for full Medicaid benefits, which includes an optional expansion of the category that a state may choose:

> *Caretaker relative* means a relative of a dependent child by blood, adoption, or marriage with whom the child is living, who assumes primary responsibility for the child's care (as may, but is not required to, be indicated by claiming the child as a tax dependent for Federal income tax purposes),

and who is one of the following—

(1) The child's father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece.

(2) The spouse of such parent or relative, even after the marriage is terminated by death or divorce.

(3) *At State option, another relative of the child based on blood* (including those of half-blood), adoption, or marriage; the domestic partner of the parent or other caretaker relative; or an adult with whom the child is living and who assumes primary responsibility for the dependent child's care.

42 C.F.R. § 435.4 (second emphasis added).

Prior to the enactment of the Patient Protection and Affordable Care Act ("the Affordable Care Act"),[1] North Carolina recognized a more expanded definition of "caretaker relative." The North Carolina Administrative Code contained a regulation ("the Rule")[2] that reflected this expanded definition:

"Caretaker Relative" means a parent or a person in one of the following groups with whom a child lives:

(a) any blood relative, including those of half-blood, and including first cousins, nephews, or nieces, *and persons of preceding generations as denoted by prefixes of grand, great, or great-great*;

---

[1] The Affordable Care Act is the comprehensive federal health care reform legislation enacted in 2010 with the primary goals of "increas[ing] the number of Americans covered by health insurance and decreas[ing] the cost of health care." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538, 183 L. Ed. 2d 450, 467 (2012).

[2] DHHS repealed the Rule with an effective date of 1 May 2022. 36 N.C. Reg. 1869–72 (June 1, 2022). It is undisputed, however, that at all times relevant to this appeal, this explicit repeal had not yet taken effect.

(b) stepfather, stepmother, stepbrother, and stepsister;

(c) persons who legally adopt a child, their parents as well as the natural and other legally adopted children of such persons, and other relatives of the adoptive parents in accordance with state law;

(d) spouses of any persons named in the groups in Sub-item (19)(a)–(c) of this Rule even after the marriage is terminated by death or divorce.

10A N.C. Admin. Code 23A.0102(19) (2020) (emphasis added).

In response to the enactment of the Affordable Care Act, which included revisions to the Medicaid eligibility groups, North Carolina submitted State Plan amendments to CMS on 26 September 2013. On 10 December 2013, CMS approved the North Carolina State Plan Amendment NC-13-00014-MM1 ("the SPA") with an effective date of 1 January 2014. The SPA includes several pages to be incorporated into North Carolina's State Plan. On page S25-1 of the SPA, the State "attests that it operates [the 'caretaker relatives'] group[,]" which includes "parents or other caretaker relatives (defined at 42 CFR 433.4), including pregnant women, of dependent children (defined at 42 CFR 435.4) under age 18. Spouses of parents and other caretaker relatives are also included." Page S25-1 also contains a series of checkboxes related to the various options in defining the category that the State may elect. The box labeled "Options relating to the definition of a caretaker relative (select any that apply)"—which must be checked in order to select an expanded definition of "caretaker relative"—is unchecked. Meanwhile, on page S51-1 of the SPA, the State

attests that it declines "to cover individuals qualifying as parents or other caretaker relatives who are not mandatorily eligible and who have income at or below a standard established by the State and in accordance with provisions described at 42 CFR 435.220."

## C. Procedural History

The Hills live with and care for their great-niece, a minor child. On 24 June 2021, the Hills submitted an application for retroactive and ongoing Medicaid Assistance for Families & Children; however, they were only approved for Family Planning Medicaid benefits, rather than full Medicaid benefits. On 22 July 2021, the Rutherford County Department of Social Services ("DSS") notified the Hills via mail that their application was approved "only for limited services related to Family Planning and COVID 19 testing." The Hills appealed DSS's decision.

On 25 August 2021, after a local appeal hearing, the Hearing Officer affirmed DSS's decision. The Hearing Officer agreed with DSS that the Hills "did not qualify for full coverage" because the "minor in the home [wa]s a 'great' niece, making the applicants ineligible for caretaker benefits." The Hearing Officer stated that "[t]he regulation[ ] on which this decision [wa]s based is found in" Section 3235 of the North Carolina Family and Children's Medicaid Manual ("the MAF Manual").

The Hills requested a state appeal, which was heard on 13 October 2021. On 15 October 2021, the State Hearing Officer issued a pair of decisions affirming DSS's prior rulings. The State Hearing Officer relied, in significant part, on the federal

definition of "caretaker relative" found in 42 C.F.R. § 435.4, the SPA, and Section 3235 of the MAF Manual. The Hills appealed again, and on 17 December 2021, the Assistant Chief Hearing Officer issued a pair of Final Decisions, once again affirming the earlier rulings.

On 13 January 2022, the Hills filed a petition for judicial review with the Rutherford County Superior Court pursuant to N.C. Gen. Stat. § 108A-79(k). The matter came on for hearing on 30 June 2022. On 7 October 2022, the superior court entered an order affirming the Final Decisions. The superior court concluded:

> [N.C. Gen. Stat. § 108A-54.1B(d)] provides that the [SPA] shall have the force and effect of the Rules. As a result, [the SPA] and the supporting [MAF] Manual are in direct conflict with [the Rule]. The later adopted [SPA] and the [MAF M]anual, however, have the force and effect of a repeal of [the Rule] since they cannot coexist together. Therefore, great[-]aunts and great[-]uncles are not included within the definition of relative caretaker and the rulings by [DHHS] should be affirmed.

The Hills timely filed notice of appeal.

## II. Discussion

Before the superior court, the parties conceded that the sole issue to be determined was whether great-aunts and great-uncles "are included within the definition of 'caretaker relatives.'" On appeal to this Court, the Hills argue that the superior court erred in affirming the previous rulings because the Hills satisfied the Rule's definition of "caretaker relative," which they maintain "is a valid and enforceable rule congruent with federal Medicaid requirements[.]" The Hills further

argue that there is "no 'direct conflict' with the Rule" and the SPA; "that DHHS may not ignore its own Rule"; and that the superior court "failed to articulate the standard of review it applied in upholding the denial of Medicaid benefits[.]"

For the following reasons, we conclude that there is a direct, irreconcilable conflict between the SPA and the Rule, and that the SPA controls. Accordingly, we affirm the superior court's order.

## A. Standard of Review

The North Carolina Administrative Procedure Act ("APA"), "codified at Chapter 150B of the General Statutes, governs trial and appellate court review of administrative agency decisions." *Amanini v. N.C. Dep't of Hum. Res.*, 114 N.C. App. 668, 673, 443 S.E.2d 114, 117 (1994). A party aggrieved by a final decision of an administrative law judge in a contested case has a right to judicial review by the superior court. N.C. Gen. Stat. § 150B-43.

Under the APA, the superior court's scope of review is limited:

> The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
>
> > (1) In violation of constitutional provisions;
> >
> > (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
> >
> > (3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under [N.C. Gen. Stat. §] 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

*Id.* § 150B-51(b).

The APA also provides two different standards of review, depending on the type of error asserted:

> In reviewing a final decision in a contested case, the court shall determine whether the petitioner is entitled to the relief sought in the petition based upon its review of the final decision and the official record. With regard to asserted errors pursuant to subdivisions (1) through (4) of subsection (b) of this section, the court shall conduct its review of the final decision using the de novo standard of review. With regard to asserted errors pursuant to subdivisions (5) and (6) of subsection (b) of this section, the court shall conduct its review of the final decision using the whole record standard of review.

*Id.* § 150B-51(c).

"A party to a review proceeding in a superior court may appeal to the appellate division from the final judgment of the superior court as provided in [N.C. Gen. Stat. §] 7A-27." *Id.* § 150B-52. "This Court's review of the superior court's order on appeal from an administrative agency decision generally involves (1) determining whether the [superior] court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Luna v. Div. of Soc.*

*Servs.*, 162 N.C. App. 1, 3, 589 S.E.2d 917, 919 (2004) (cleaned up). "[O]ur review of a [superior] court's order under [N.C. Gen. Stat.] § 150B-52 is the same as in any other civil case—consideration of whether the court committed any error of law." *Id.* (citation omitted). "[W]e review de novo the legal issues, including whether the findings of fact are adequate to support the conclusions of law." *Id.* at 7, 589 S.E.2d at 921.

## B. Analysis

The crux of this case is the effect that the 2013 adoption of the SPA had on the Rule. The parties agreed before the superior court that this issue determined the outcome of this matter. Thus, "the appropriate scope of review" was this single question of law, *id.* at 3, 589 S.E.2d at 919 (citation omitted), and the parties agree that de novo review was the applicable standard of review for the superior court, N.C. Gen. Stat. § 150B-51(b)(4), (c). Our careful review of the order on appeal shows that the superior court appropriately conducted de novo review of the Assistant Chief Hearing Officer's ruling. We therefore turn to "whether the court committed any error of law" when conducting its de novo review. *Luna*, 162 N.C. App. at 3, 589 S.E.2d at 919 (citation omitted).

The Hills argue that because the definition of "caretaker relative" found in the Rule applies, the superior court erred in concluding, as a matter of law, that "great[-]aunts and great[-]uncles are not included within the definition of relative caretaker[.]" According to the Hills, "the Rule exists as a valid legislative rule binding

on not only the regulated public but also DHHS from promulgation until 1 May 2022." By contrast, DHHS contends that "a plain reading of the two definitions indicates that they are clearly at odds with one another" and that the SPA definition controls because, *inter alia*, "it was the most recently adopted definition at the time of [the Hills'] application." We agree with DHHS.

The SPA has "the force and effect of rules adopted pursuant to Article 2A of Chapter 150B of the General Statutes." N.C. Gen. Stat. § 108A-54.1B. We are thus tasked with interpreting the Rule and the SPA as a pair of administrative regulations. When interpreting administrative regulations, our appellate courts apply the same rules of construction that we apply when interpreting statutes. *Cole v. N.C. Dep't of Pub. Safety*, 253 N.C. App. 270, 278, 800 S.E.2d 708, 714, *disc. review denied*, 370 N.C. 71, 803 S.E.2d 156 (2017).

Accordingly, a reviewing court "looks first to the plain meaning of the words of the [regulation] itself. Interpretations that would create a conflict between two or more [regulations] are to be avoided, and [regulations] should be reconciled with each other whenever possible." *Aetna Better Health of N.C., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 279 N.C. App. 261, 266, 866 S.E.2d 265, 269 (2021) (cleaned up). Further, when determining whether a conflict between regulations exists, "repeals by implication are not favored and the presumption is always against implied repeal. Instead, repeal by implication results only when the [regulations] are inconsistent, necessarily repugnant, utterly irreconcilable, or wholly and irreconcilably

repugnant." *State ex rel. Utils. Comm'n v. Town of Kill Devil Hills*, 194 N.C. App. 561, 567, 670 S.E.2d 341, 345 (emphasis omitted) (cleaned up), *aff'd per curiam*, 363 N.C. 739, 686 S.E.2d 151 (2009).

In the instant case, the SPA and the Rule are in irreconcilable conflict with one another. Page S25-1 of the SPA provides that the State declined to adopt the expanded definition of "caretaker relative" found in 42 C.F.R. § 435.4—that is, the State declined to include great-aunts and great-uncles in the definition of "caretaker relative" when it adopted the SPA. This directly and irreconcilably conflicts with the Rule, which included great-aunts and great-uncles in its definition of "caretaker relative."

The Hills do not attempt to harmonize these two regulations; instead, they question whether "a mere blank checkbox" on Page S25-1 of the SPA truly expresses the State's intent to impliedly repeal the Rule via the SPA. The Hills' arguments are unpersuasive. Moreover, the Hills cannot resolve the irreconcilable conflict between the SPA and the Rule: either great-aunts and great-uncles are "caretaker relatives" per the Rule or they are not per the SPA. There is no reconciling these contradictory definitions.

"When two statutes apparently overlap, it is well established that the statute special and particular shall control over the statute general in nature, even if the general statute is more recent, unless it clearly appears that the legislature intended the general statute to control." *In re Winstead*, 189 N.C. App. 145, 147, 657 S.E.2d

411, 413 (2008). Again, the same rules of construction apply to administrative regulations. *Cole*, 253 N.C. App. at 278, 800 S.E.2d at 714.

In this instance, neither regulation is more "special and particular" or more "general in nature" than the other, *Winstead*, 189 N.C. App. at 147, 657 S.E.2d at 413; both the SPA and the Rule define "caretaker relative" for the purposes of North Carolina's administration of Medicaid. However, the SPA controls as the most recent expression of the State's intent with respect to this issue. *See In re Guess*, 324 N.C. 105, 107, 376 S.E.2d 8, 10 (1989) ("It is a generally accepted rule that where there is an irreconcilable conflict between two statutes, the later statute controls as the last expression of legislative intent."). Thus, the trial court properly held that the SPA definition of "caretaker relative" applies in its exercise of de novo review.

Lastly, the Hills contend that the superior court incorrectly compared the Rule to Page S51-1 of the SPA, and "should have evaluated the Rule as compared to SPA Page S25-1." It is true that in its order, the superior court specifically referred to Page S51-1 of the SPA, which refers to the incorrect CMS regulation—42 C.F.R. § 435.220—and concerns income eligibility rather than the definition of "caretaker relative." As Page S25-1 explicitly references the appropriate CMS regulation—42 C.F.R. § 435.4—and offers the opportunity for the State to select "[o]ptions relating to the definition of caretaker relative[,]" the superior court's order reflects that it did not consider the appropriate page of the SPA in making its ruling.

However, this error does not rise to the level of error requiring reversal or remand. "We need not remand for reconsideration if we can reasonably determine from the record whether the petitioner's asserted grounds for challenging the agency's final decision warrant reversal or modification of that decision under the applicable provisions of [N.C. Gen. Stat.] § 150B-51(b)." *Early v. Cty. of Durham DSS*, 172 N.C. App. 344, 360, 616 S.E.2d 553, 564 (2005) (cleaned up), *disc. review improvidently allowed*, 361 N.C. 113, 637 S.E.2d 539 (2006).

Our careful review of the SPA and the Rule demonstrates that the superior court arrived at the correct outcome on the dispositive issue here. Accordingly, the superior court's order is properly affirmed despite the authorities upon which it relies.

## III. Conclusion

For the foregoing reasons, the superior court's order is affirmed.

AFFIRMED.

Judges STROUD and MURPHY concur.