MEHERRIN TRIBE OF NORTH CAROLINA A/K/A MEHERRIN INDIAN TRIBE, PETITIONER AND PLAINTIFF v. NORTH CAROLINA STATE COMMISSION OF INDIAN AFFAIRS, RESPONDENT AND DEFENDANT

No. COA11-885

(Filed 3 April 2012)

**Native Americans—North Carolina State Commission of Indian Affairs—jurisdiction to hear intra-tribal disputes**

The trial court erred in reversing respondent North Carolina State Commission of Indian Affairs' (Commission) decision to decline to decide which of two individuals representing competing factions of petitioner tribe represented the tribe on the Commission. The Commission had no jurisdiction to decide the issue as N.C.G.S. §§ 143B-405 and 143B-406 gave the Commission no authority to resolve such intra-tribal disputes.

Appeal by respondent from order entered 9 June 2010 by Judge Michael R. Morgan in Wake County Superior Court. Heard in the Court of Appeals 11 January 2012.

---

*Barry Nakell for petitioner-appellee.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Donald R. Teeter, Sr., for respondent-appellant.*

ERVIN, Judge.

Respondent North Carolina State Commission of Indian Affairs appeals from an order entered by the trial court reversing the Commission's decision to overturn an order entered by Senior Administrative Law Judge Fred G. Morrison granting summary judgment in favor of Petitioner Meherrin Tribe of North Carolina. The ultimate issue in dispute between the parties is the extent, if any, to which the Commission erred by declining to seat a representative favored by the leadership of the Tribe as the Meherrin representative on the Commission.[1] After careful consideration of the Commission's challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be reversed and that this matter should be remanded to the trial court for further remand to the Commission for the entry of an order dismissing the Tribe's petition.

## I.  Background

### A.  Substantive Facts

"The Meherrin Indian Tribe [] is composed of the descend[ants] of indigenous peoples who formerly resided at the mouth of the Meherrin River Valley and 'who are of the same linguistic stock as the Cherokee, Tuscarora, and other tribes of the Iroquois Confederacy of New York and Canada . . . .' N.C. Gen. Stat. § 71A-7.1 (2007). These descend[ants] 'now resid[e] in small communities in Hertford, Bertie, Gates, and Northampton Counties . . . .' *Id.* The [Meherrin have] not been recognized by the federal government and although N.C. Gen. Stat. § 71A-7.1 states that 'in 1726 [the Tribe] w[as] granted reservational lands[,]' any such right to these lands now appears extinguished. The [Meherrin are] governed by the 1996 Meherrin Tribe Constitution and By-Laws, as amended." *Meherrin Indian Tribe v.*

---

1. As will be explained in more detail later in this opinion, two factions are competing for control of the tribal government. In order to avoid confusion, references to ".the Tribe" should be understood to be to the faction that removed the former tribal chief and wishes to have Chassidy Hall seated as a member of the Commission and references to "the Meherrin" should be understood to be to all individuals eligible to claim membership in the Meherrin Tribe regardless of their position concerning the underlying tribal dispute.

*Lewis*, 197 N.C. App. 380, 381, 677 S.E.2d 203, 205 (2009), *disc. rev. denied*, 363 N.C. 806, 690 S.E.2d 705 (2010) *(Meherrin I)*.

"On 10 November 2007, the [Meherrin] held a duly noticed and regularly scheduled meeting of its General Body." *Meherrin I*, 197 N.C. App at 381, 677 S.E.2d at 205. At this meeting, those in attendance voted to remove Thomas Lewis as Chief and scheduled the next tribal meeting for 12 January 2008 at the Meherrin Indian Church. Prior to the January meeting, Chief Lewis announced on the tribal website that the meeting had been moved to the Elks Shrine Building. As a result, two meetings were conducted on 12 January 2008. While the group supporting Chief Lewis met at the Elks building, the group supporting the removal of Chief Lewis met at the Church, where they voted to replace Douglas Patterson with Ms. Hall as the Meherrin representative to the Commission. Based on these events, the Tribe, which represents the anti-Chief Lewis faction, contends that Chief Lewis was properly removed from his position on 10 November 2007; that Ms. Hall replaced Mr. Patterson as the Tribe's representative to the Commission on 12 January 2008; and that the Commission was obliged to seat Ms. Hall as the Meherrin representative. The pro-Chief Lewis faction contends, on the other hand, that Chief Lewis was not properly removed as Chief on 10 November 2007; that Mr. Patterson was not properly replaced by Ms. Hall as the Meherrin representative on the Commission on 12 January 2008; and that Mr. Patterson should be seated as the Meherrin representative to the Commission.

On 13 March 2008, the Tribe, as representative of the anti-Chief Lewis faction, filed a civil action against former Chief Lewis, Mr. Patterson, and others associated with the pro-Chief Lewis faction seeking the entry of a declaratory judgment identifying the individuals who constitute the lawful leadership of the Meherrin. Among other things, the Tribe asked for a declaration that "Thomas Lewis has been removed as Chief" and that the actions taken at the 10 November 2007 meeting and 12 January 2008 meeting of the anti-Chief Lewis faction be deemed valid.

"On 8 May 2008, [the *Meherrin I*] defendants filed a pre-answer motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1), (2), and (6). Defendants' motion to dismiss claimed 'the underlying facts raised in the Complaint arise from acts of self-governance over the people and property of the Meherrin Tribe of North Carolina[;] this action should be dismissed for lack of subject matter jurisdic-

tion, lack of personal jurisdiction and for Plaintiffs' failure to state a claim upon which relief may be granted.' Defendants further alleged that 'Plaintiffs' action should be dismissed for lack of subject matter jurisdiction based on Plaintiffs' lack of standing to bring suit.' " *Meherrin I* at 382-83, 677 S.E.2d at 206. The trial court denied the defendants' motion to dismiss, and the defendants appealed to this Court. We upheld the trial court's decision, stating that:

> The Meherrin Tribe has no reservation. The Tribe has not been recognized by the federal government. The constitution of the Tribe has no functioning judiciary for resolution of intra-tribal disputes to which this dispute could be referred prior to litigation. The sole source of legal authority of the Tribe flows from N.C. Gen. Stat. § 71A-7.1[.][2] . . . While indigenous tribes may enjoy sovereign immunity over some disputes, the predicate facts which would present a sovereign immunity defense are not present here.

*Meherrin I* at 385-86, 677 S.E.2d at 208 (citing *Jackson Co. v. Swayney*, 319 N.C. 52, 352 S.E.2d 413, *cert. denied*, 484 U.S. 826, 108 S. Ct. 93, 98 L. Ed. 2d 54 (1987)). As a result, we held in *Meherrin I* that this intra-tribal power struggle was properly resolved in superior court given the absence of tribal institutions which had the authority to make the necessary decision and that the case should be remanded to the Hertford County Superior Court for resolution of the underlying leadership dispute.

### B. Procedural History

On 13 May 2008, Chief Lewis wrote the Commission for the purpose of asserting that Mr. Patterson was the duly elected Meherrin representative to that body. On 16 September 2008, the Tribe filed a petition for a contested case hearing pursuant to N.C. Gen. Stat. § 150B-2 alleging that the Commission had improperly refused to seat Ms. Hall as the Meherrin representative. The petition made no reference to the controversy over the validity of the vote by which Ms. Hall was allegedly elected to the Commission or the fact that litigation to resolve the underlying leadership dispute had been initiated and was ongoing. On 17 October 2008, the Tribe filed an amended petition in which it repeated its earlier allegations regarding Ms. Hall's status as the elected Meherrin representative to the Commission and asserted that the Commission had improperly acted in support of the other

---

2. N.C. Gen. Stat. § 71A-7.1 does not grant any executive or judicial power to the Tribe.

faction. On 8 October 2008, the Commission moved to dismiss the Tribe's petition on the grounds that there "existed an internal dispute within the [Meherrin] as to the actual and proper leadership of the tribe which resulted in the commencement of litigation" and that "said litigation is still pending." In addition, Respondent asserted that it had "received two names to fill the Meherrin seat" and had, for that reason, decided to allow the seat to remain vacant until the internal tribal controversy had been resolved.

On 27 March 2009, the Tribe sought partial summary judgment with respect to its claim that Ms. Hall had been properly elected as the Meherrin representative to the Commission. In support of this motion, the Tribe submitted a copy of the tribal constitution and bylaws and an affidavit executed by Chief Wayne Brown, the chief elected by the anti-Chief Lewis faction, delineating the events which led to his election. On 30 March 2009, the Tribe filed a revised motion for summary judgment supported by the materials that had been previously submitted and numerous e-mails between the Tribe's counsel and others involved in the dispute concerning various substantive and procedural issues relating to the validity of actions taken by the competing factions on 10 November 2007 and 12 January 2008. On 17 April 2009, the Tribe filed a second affidavit executed by Chief Brown addressing the validity of one of the competing meetings held on 12 January 2008. On 9 March 2009, the Commission submitted a brief in opposition to the Tribe's partial summary judgment motion in which it argued that, pursuant to certain provisions of the Meherrin constitution and bylaws, Chief Lewis was never properly removed and that the meeting held by the pro-Chief Lewis faction on 12 January 2008, rather than the competing meeting held by the anti-Chief Lewis faction on that same date, was the official tribal meeting. On 9 April 2009, the affidavit of the Commission's Executive Director, Greg Richardson, detailing the history of the communications that the two factions had had with the Commission and the Commission's decision to declare the seat vacant pending resolution of the internal tribal conflict was filed. On 4 June 2009, Chief Lewis executed an affidavit setting out his basis for believing that he remained the lawful Chief. On 15 June 2009, Judge Morrison entered an order granting summary judgment in favor of the Tribe[3] in which he stated that:

---

3. The record also indicates that Judge Morrison denied Mr. Patterson's motion to intervene or to dismiss, continue, or stay the present proceeding "pending a final adjudication in the Superior Court of Hertford County in [*Meherrin I*]."

As there is no genuine issue as to any material fact, [the Tribe] is entitled to judgment as a matter of law. [The Tribe]'s Motion for Summary Judgment is Granted. There has been no vacancy from [the Tribe]'s perspective as it voted for Ms. Hall to replace Mr. Patterson as its representative prior to the expiration of his term, and so notified the Commission. [The Commission] shall accept and recognize Chassidy Hall as the Meherrin representative on the North Carolina Commission of Indian Affairs for a term of three years.

On 17 November 2009, the Tribe filed a petition for judicial review in which it argued that, because the Commission had not yet filed a final agency decision, Judge Morrison's decision had become final by operation of law. On 17 December 2009, the Commission filed a response asserting that it had not been properly notified of Judge Morrison's decision or provided with a copy of the record developed before the Office of Administrative Hearings. On 22 December. 2009, the Tribe filed motions for summary judgment and judgment on the pleadings; however, the trial court denied those motions on 10 February 2010. On 29 January 2010, the trial court ruled that the record developed before the Office of Administrative Hearings had not been properly delivered to the Commission, that the Commission was required to render its final decision by 4 February 2010, and that the Commission must issue a written decision by no later than 12 February 2010. After conducting a hearing on 2 February 2010, the Commission determined that the record disclosed the existence of genuine issues of material fact, all of which pertained to the tribal leadership dispute and the validity of various actions that had been taken by the competing factions, and remanded this case to Judge Morrison for further proceedings.

On 1 March 2010, the Tribe filed a petition for judicial review. In its petition, the Tribe alleged that the 2 February 2010 hearing had not been held in a timely manner, an assertion that implicitly challenged the trial court's earlier decision to allow the Commission to make a decision on or before 4 February 2010, and that "the hearing was held in violation of state law and due process," an assertion that rested on a variety of challenges to the manner in which the hearing before the Commission had been conducted. The assertions in the Tribe's petition focused on aspects of the procedure employed at the 2 February 2010 hearing that the Tribe considered unfair, improper, or as tending to favor the other faction of the tribe, and on assertions tending to support the Tribe's position that Ms. Hall, rather than Mr. Patterson,

was the properly elected Meherrin representative on the Commission. However, the Tribe conceded that "[t]he issue before the Administrative Law Judge and before the Commission was only whether Chassidy Hall or Douglas Patterson had been designated or selected by the Meherrin Indian Tribe, a/k/a Meherrin Tribe of North Carolina, as its representative on the Commission." On 26 March 2010, the Commission filed an answer to the Tribe's petition in which it requested the trial court to affirm its decision to reverse Judge Morrison's order.

On 29 and 30 March 2010, the trial court conducted a hearing concerning the issues raised by the Tribe's petition for judicial review. On 8 June 2010, the trial court entered orders denying several motions filed by the Tribe for the purpose of seeking reconsideration of earlier rulings and denying the Tribe's motion for summary judgment. On 9 June 2010, the trial court entered an order in which it stated, in pertinent part, that:

> 2. In his Decision Granting Summary Judgment for [the Tribe], . . . the Administrative Law Judge determined that there were no genuine issues as to any material fact and that [the Tribe] was entitled to judgment as a matter of law[.]
>
> 3. While [the Commission], in its Decision and Order . . ., identified eight issues of material fact . . ., those issues are not of such material fact as to constitute grounds for remand of the case to an Administrative Law Judge[.] . . .
>
> 4. There is no genuine issue as to material fact in this administrative contested case proceeding.
>
> 5. The Administrative Law Judge . . . properly found that there is no genuine issue as to any material fact.
>
> 6. The Administrative Law Judge properly found that the [Tribe] is entitled to judgment as a matter of law.
>
> 7. The Administrative Law Judge properly granted the [Tribe's] Motion for Summary Judgment[.] . . .
>
> 8. . . . [The Court] adopts the Administrative Law Judge's decision allowing summary judgment for the [Tribe] . . ., thereupon reversing the [Commission]'s decision.

The Commission noted an appeal to this Court from the trial court's order.

## II. Legal Analysis

### A. Standard of Review

As of the date upon which the trial court entered its order,[4] N.C. Gen. Stat. § 150B-36 provided, in pertinent part, that:

> (d)  An Administrative Law Judge may grant . . . summary judgment, pursuant to a motion made in accordance with G.S. 1A-1, Rule 56[.] . . . For any decision by the Administrative Law Judge granting . . . summary judgment that disposes of all issues in the contested case, the Agency[5] shall make a final decision. . . . The party aggrieved by the Agency's decision shall be entitled to immediate judicial review of the decision under Article 4 of this Chapter.

Similarly, at the time that the trial court's order was entered,[6] N.C. Gen. Stat. § 150B-51 provided that:

> (d)  In reviewing a final Agency decision allowing judgment on the pleadings or summary judgment, or in reviewing an Agency decision that does not adopt an Administrative Law Judge's decision allowing judgment on the pleadings or summary judgment pursuant to G.S. 150B-36(d), the court may enter any order allowed by G.S. 1A-1, Rule 12(c) or Rule 56. . . .

According to well-established North Carolina law, a trial court's decision to grant summary judgment raises a question of law, which we review *de novo. Krueger v. N.C. Criminal Justice Educ. & Training Standards Comm'n*, 198 N.C. App. 569, 577, 680 S.E.2d 216, 221 (2009) (stating that, "[s]ince the decision at issue is a summary judgment decision and an appellate court reviews a grant of summary judgment *de novo*, this Court can—and, according to [*N.C. Dep't of Env't & Natural Res. v.*] *Carroll*, [358 N.C. 649, 664, 599 S.E.2d 888, 898 (2004),] should—go ahead and review the final agency decision under the correct Rule 56 standard."). As a result, the ultimate issue that the Commission's appeal presents for our consideration is the extent, if any, to which Judge Morrison appropriately entered summary judgment in favor of the Tribe.

---

4. N.C. Gen. Stat. § 150B-36 was repealed, effective 1 January 2012.

5. The parties appear to agree that the Commission is an "agency" as defined in N.C. Gen. Stat. § 150B-2(1a), which defines an "agency" as "an agency or officer in the executive branch of the government of this State," including "the Council of State, the Governor's office, a board, a commission, a department, a council, and any other unit of government in the executive branch."

6. N.C. Gen. Stat. § 150B-51 was amended, effective 1 January 2012.

## B. Jurisdiction over Internal Tribal Disputes

As we have already indicated, the fundamental issue around which the present case revolves is the extent, if any, to which the Commission acted appropriately by failing to determine that Ms. Hall should be seated as the Meherrin representative on the Commission. "Administrative boards have only such authority as is properly conferred upon them by the Legislature." *Insurance Co. v. Gold, Commissioner of Insurance*, 254 N.C. 168, 173, 118 S.E.2d 792, 796 (1961). "As a creature of the Legislature, an agency of the State 'can only exercise (1) the powers granted in express terms, (2) those necessarily implied in or fairly incident to the powers expressly granted, and (3) those essential to the declared [purposes] of the [agency].' " *Carl v. State*, 192 N.C. App. 544, 553, 665 S.E.2d 787, 795 (2008) (quoting *Madry v. Scotland Neck*, 214 N.C. 461, 462, 199 S.E. 618, 619 (1938), *disc. review and cert. denied*, 363 N.C. 123, 672 S.E.2d 684 (2009). As a result, the initial question we must address in order to decide the issues raised by the Commission's appeal is the extent, if any, to which the Commission has the authority to resolve disputes over its own membership arising from intra-tribal controversies.

The Commission was established by N.C. Gen. Stat. § 143B-404 and is "administered under the direction and supervision of the Department of Administration[.]" N.C. Gen. Stat. § 143B-407, which governs the composition of the Commission and the manner in which its members are selected, provides, in pertinent part, that:

> (a) The State Commission of Indian Affairs shall consist of . . . [appointed members and] representatives of the Indian community. These Indian members shall be selected by tribal or community consent from the Indian groups that are recognized by the State of North Carolina[.] . . . [T]he Meherrin [has] one [representative]. . . .

> (b) . . . Members representing Indian tribes and groups shall be elected by the tribe or group concerned and shall serve for three-year terms[.] . . . Vacancies occurring on the Commission shall be filled by the tribal council or governing body concerned. . . . In the event that a vacancy occurs among the membership representing Indian tribes and groups and the vacancy temporarily cannot be filled by the tribe or group for any reason, the Commission membership may designate a tribal or group member to serve on the Commission on an interim basis until the tribe or group is able to select a permanent member to fill the vacancy. . . .

According to N.C. Gen. Stat. § 143B-405, "[t]he purposes of the Commission shall be as follows:

  (1) To deal fairly and effectively with Indian affairs.

  (2) To bring . . . resources into focus for the implementation or continuation of meaningful programs for Indian citizens[.]

  (3) To provide aid and protection for Indians as needs are demonstrated[.]

  (4) To hold land in trust for the benefit of State-recognized Indian tribes.[]

  (5) To assist Indian communities in social and economic development.

  (6) To promote recognition of and the right of Indians to pursue cultural and religious traditions considered by them to be sacred and meaningful to Native Americans.

In order to achieve these ends, N.C. Gen. Stat. § 143B-406 authorizes the Commission:

  (1) To study . . . assemble and disseminate information on any aspect of Indian affairs.

  (2) To investigate relief needs of Indians of North Carolina and to provide technical assistance in the preparation of plans for the alleviation of such needs.

  (3) To confer with appropriate officials . . . to encourage and implement coordination of applicable resources to meet the needs of Indians in North Carolina.

  (4) To cooperate with and secure the assistance of the local, State and federal governments . . . in formulating any such programs, and to coordinate such programs with any [federal] programs[.] . . .

  (5) To act as trustee for any interest in real property that may be transferred to the Commission for the benefit of State-recognized Indian tribes[.] . . .

  (6) To review all proposed or pending State legislation and amendments to existing State legislation affecting Indians in North Carolina.

(7)  To conduct public hearings on matters relating to Indian affairs and to subpoena any information or documents deemed necessary by the Commission.

(8)  To study the existing status of recognition of all Indian groups, tribes and communities . . . [in] North Carolina.

(9)  To establish appropriate procedures to provide for legal recognition by the State of presently unrecognized groups.

(10)  To provide for official State recognition by the Commission of such groups.

(11)  To initiate procedures for their recognition by the federal government.

A careful examination of the relevant statutory provisions clearly demonstrates that the General Assembly intended for the Commission to primarily serve an advocacy and resource provision function and that the General Assembly did not appear to contemplate that the Commission would function as an administrative or judicial body vested with substantial decision-making authority, including the authority to resolve intra-tribal disputes.

As we have already noted, the ultimate issue raised by the Tribe's initial petition was the extent to which the Commission should resolve the dispute between the competing Meherrin factions concerning the identity of the Meherrin representative on the Commission by determining that Ms. Hall had been properly selected to fill that position. The validity of the Tribe's position hinges upon the lawfulness of the decision to remove Chief Lewis on 7 November 2008 and the decision of the anti-Chief Lewis faction to elect Ms. Hall to replace Mr. Patterson as the Meherrin representative to the Commission on 12 January 2009. Thus, in order to grant the relief requested by Petitioner, the Commission would be required to resolve the underlying intra-tribal dispute, a decision well outside the scope of its explicit or implicit statutory authority. As a result of the fact that we have identified no statutory provision that would authorize the Commission to adjudicate intra-tribal controversies such as the one that underlies the present dispute,[7] we hold that the Commission

_____

7. Although N.C. Gen. Stat. § 143B-407(b) does authorize the Commission, in the event that "a vacancy occurs among the membership representing Indian tribes and groups" that "temporarily cannot be filled by the tribe or group for any reason," "to designate a tribal or group member to serve on the Commission on an interim basis until the tribe or group is able to select a permanent member to fill the vacancy," we do not believe that this provision authorizes the Commission to determine whether

had no authority to decide which of the two competing Meherrin representatives should be seated on the Commission and that the Tribe's petitions ultimately seek relief which the Commission is not empowered to provide. For that reason, we further conclude that the trial court erred by reversing the Commission's decision to refrain from seating Ms. Hall as the Meherrin representative and that Judge Morrison had no authority to grant summary judgment in favor of the Tribe in connection with its request that the Commission seat Ms. Hall as the Meherrin representative.[8]

### III.  Conclusion

Thus, for the reasons discussed above, we conclude that the Commission's challenge to the trial court's order, which erroneously assumed that the Commission had the authority to resolve the issue of whether Ms. Hall or Mr. Patterson should serve as the Commission's representative to the Commission, is well-founded. As a result, the trial court's order is reversed and this case is remanded to the trial court for further remand to the Commission with instructions that the petition be dismissed for lack of jurisdiction.

REVERSED AND REMANDED.

Judges BRYANT and ELMORE concur.

---

Ms. Hall or Mr. Patterson should represent the Meherrin on the Commission given that the underlying problem is a dispute between two competing tribal factions over which group is entitled to control the Meherrin and which of two competing candidates for Commission membership should be deemed legitimate rather than a temporary vacancy that the Meherrin are unable, for some reason unrelated to an intra-tribal dispute, to fill.

8. In light of our determination that the Commission lacks the authority to resolve the underlying intra-tribal dispute and to identify the lawfully-elected Meherrin representative to the Commission, we further conclude that the General Court of Justice provides the appropriate forum within which these questions should be resolved, with the available options including, but not necessarily being limited to, amending the pleadings in the Hertford County Superior Court action discussed earlier in this opinion to include resolution of the Commission membership controversy or, depending upon facts and circumstances of which we lack complete information, initiating a separate action devoted to the resolution of that issue.