McGEE, Chief Judge.
North Carolina Office of State Human Resources ("Respondent") (hereinafter "OSHR") appeals from a final decision of the Office of Administrative Hearings ("OAH") granting a motion for summary judgment by Veronica Wright ("Petitioner") and denying OSHR's motions for summary judgment.
I. Factual & Procedural History
OSHR serves as the "Center of Human Resources Expertise" for the State of North Carolina. OSHR posted a job opening for "Diversity and Inclusion Director" on 22 June 2015. Petitioner was offered that position by letter dated 4 August 2015. The letter provided the following information: Petitioner would begin employment 8 September 2015, would report to the State Human Resources Director, C. Neal Alexander, Jr. ("Director Alexander"), and would serve a probationary period of twenty-four months. Petitioner received a second letter dated 4 August 2015, which specified that the position was designated exempt managerial.[1]
Then-Governor Pat McCrory reversed the position's exempt designation on 20 January 2016. Director Alexander subsequently approved the exempt designation reversal. Petitioner entered a twelve-month probationary period beginning 20 January 2016.
Roy Cooper (the "Governor") was elected Governor of North Carolina in November 2016. The General Assembly passed Session Law 2016-126 in 2016 that curtailed the Governor's authority by, inter alia : (1) reducing the number of positions from 1,500 to 425 that the Governor was authorized to designate as exempt; (2) conferring immediate career State employee status on a number of employees working in non-exempt positions; and (3) removing OSHR from the list of exempt positions. 2016 N.C. Sess. Law ch. 126, §§ 7, 8.
In a series of suits,[2] the Governor challenged the constitutionality of portions of Session Law 2016-126. The Governor specifically challenged the portions of Sections 7 and 8 of Part I of Session Law 2016-126, codified at N.C. Gen. Stat. § 126-5(d)(2c), which conferred immediate career status on employees in non-exempt positions (the "Exempt Positions Amendments"). The Chief Justice of the Supreme Court of North Carolina convened a three-judge panel of superior court judges, pursuant to N.C. Gen. Stat. § 1-267.1(b1) (2017), to hear the Governor's constitutional challenges. In Cooper v. Berger, ("Cooper I "), the three-judge panel held that the Exempt Positions Amendments unconstitutionally prevented the Governor from "taking care that the laws are faithfully executed."[3] No. 16 CVS 15636, 2017 WL 1433245 (N.C. Super. Ct. Wake Cty. Mar. 17, 2017). The General Assembly subsequently repealed N.C. Gen. Stat. § 126-5(d)(2c), effective 25 April 2017.
Barbara Gibson ("Director Gibson") became Director of OSHR in January 2017. Director Gibson received a letter from the Governor's Office on 18 January 2017 designating Petitioner's position statutorily exempt pursuant to N.C. Gen. Stat. § 126-5(c1)(6). The next day, on 19 January 2017, Petitioner was given a letter explaining that her position was now exempt based upon the Governor's statutory authority to exempt positions in his office. That letter also notified Petitioner that her employment at OSHR was terminated effective "at the end of the workday January 19, 2017."
Petitioner filed a contested case petition on 1 February 2017 with OAH. Petitioner and OSHR each filed a motion for summary judgment. OSHR filed a second motion for summary judgment on 8 May 2017. Administrative Law Judge Melissa Owens Lassiter (the "ALJ") entered a final decision on 25 October 2017, denying OSHR's motions for summary judgment and granting Petitioner's motion for summary judgment.
II. Jurisdiction
As an initial matter, this Court's jurisdiction must be determined.
The General Assembly repealed N.C. Gen. Stat. § 126-34.1 and replaced it with N.C. Gen. Stat. § 126-34.02 in 2013. 2013 N.C. Sess. Law ch. 382, § 9.1(c). Pursuant to N.C. Gen. Stat. § 126-34.02 (2017), "[a]n aggrieved party in a contested case under this section" can appeal a final decision of OAH directly to this Court. However, the present case was filed under N.C. Gen. Stat. § 126-5(h) (2017), which provides "[i]n case of dispute as to whether an employee is subject to the provisions of this Chapter, the dispute shall be resolved as provided in Article 3 of Chapter 150B." Chapter 150B, unlike N.C.G.S. § 126-34.02, does not provide a direct right of appeal to this Court.
During oral argument before this Court, Petitioner's appellate counsel conceded the law regarding this Court's jurisdiction over this action is unclear. As a result, counsel for both parties requested this Court treat OSHR's brief as a petition for writ of certiorari . "This Court does have the authority pursuant to North Carolina Rule of Appellate Procedure 21(a)(1) to 'treat the purported appeal as a petition for writ of certiorari' and grant it in our discretion." Luther v. Seawell , 191 N.C. App. 139, 142, 662 S.E.2d 1, 3 (2008) (quoting State v. SanMiguel , 74 N.C. App. 276, 277-78, 328 S.E.2d 326, 328 (1985) ). In the interest of judicial economy, we elect to consider OSHR's brief as a petition for writ of certiorari , grant the petition, and determine the merits of this appeal.
III. Analysis
OSHR contends the ALJ erred in granting Petitioner's motion for summary judgment in that: (1) Petitioner was not a career State employee because, at the time she was terminated, she had not worked in a non-exempt position for twelve consecutive months; and (2) the Governor had the authority under N.C. Gen. Stat. §§ 126-3(a), 126-5(c1)(6) (2017) to designate Petitioner's position exempt and to summarily terminate her employment without cause. We disagree.
A. Standard of Review
This Court "appl[ies] the same review standard established by Rule 56 of the North Carolina Rules of Civil Procedure when reviewing an agency's summary judgment ruling, and our scope of review is de novo ." Heard-Leak v. N.C. State Univ. Ctr. for Urban Affairs , 250 N.C. App. 41, 45, 798 S.E.2d 394, 397 (2016). Accordingly, "the ultimate issue that [OSHR's] appeal presents for our consideration is the extent, if any, to which [the ALJ] appropriately entered summary judgment in favor of [Petitioner]." Meherrin Tribe of N.C. v. N.C. State Comm'n of Indian Affairs , 219 N.C. App. 558, 565, 724 S.E.2d 644, 649 (2012).
B. Career State Employee
Chapter 126 of the North Carolina General Statutes establishes the North Carolina Human Resources Act (the "SHRA"). The provisions of the SHRA apply to all non-exempt State employees. N.C.G.S. § 126-5(a)(1), (c). A "career state employee" is defined as one who "(1) [i]s in a permanent position with a permanent appointment, and (2) [h]as been continuously employed by the State of North Carolina or a local entity as provided in G.S. [§] 126-5(a)(2) in a position subject to the [SHRA] for the immediate 12 preceding months." N.C. Gen. Stat. § 126-1.1(a) (2017). A "probationary State employee" is one who has not yet worked the full twelve consecutive months in a non-exempt position following an exempt reversal. N.C.G.S. § 126-1.1. A probationary employee is exempt from the provisions of the SHRA. N.C.G.S. § 126-1.1(b).
OSHR contends that the ALJ erred in concluding Petitioner was a career State employee subject to the protections of the SHRA at the time she was terminated because (1) the notice requirement of N.C.G.S. § 126-5(g) was inapplicable to Petitioner, as her position's exempt designation was pursuant to statute, and (2) the Exempt Positions Amendments did not affect her status as a career State employee. Accordingly, we must determine the applicability of N.C.G.S. § 126-5(g) to a position designated exempt by statute and the effect of the Exempt Positions Amendments on Petitioner's status as a career State employee.
1. Notice
N.C.G.S. § 126-5(g) provides, in pertinent part: "No employee shall be placed in an exempt position without 10 working days prior written notification that such position is so designated." (Emphasis added). Petitioner received notification of her position's exempt designation and termination on 19 January 2017. The basis of the designation was the Governor's authority, under N.C.G.S. § 126-5(c1)(6), to exempt positions within his office. As Petitioner was notified of her position's exempt designation on the same day the designation took effect, OSHR violated the statutory mandate of N.C.G.S. § 126-5(g).
Moreover, the North Carolina Administrative Code (the "Administrative Code") provides, in pertinent part:
(b) While most positions are filled through systematic recruitment, it is recognized that some positions in State government are exempt from various provisions of the State Human Resources Act because of the relationship between the position and the responsibility of elected or appointed officials expected to implement the public policy of the State. While these positions are exempt from various provisions of the [SHRA], they are subject to the following requirements:
....
(3) If an employee occupies a subject position that is subsequently designated as exempt, the agency shall provide written notification to the employee that the position has been designated exempt. The exemption shall apply to the employee 10 working days after receiving written notification.
25 N.C. Admin. Code 1H. 0630 (emphasis added). Thus, pursuant to the Administrative Code, an exempt designation does not take effect until ten days after an employee receives written notification. Id. Petitioner's exempt designation, therefore, became effective on 29 January 2017, ten days after she received notice. At that time, Petitioner would have undeniably worked in a non-exempt position for twelve consecutive months, from 20 January 2016 to 29 January 2017, rendering her a career State employee subject to the protections of SHRA.
We must next determine whether N.C.G.S. § 126-5(g) was applicable to Petitioner when her position's exempt designation was pursuant to statute. An "exempt position," as defined in Chapter 126, "means an exempt managerial position or an exempt policymaking position." N.C.G.S. § 126-5(b)(1). In resolving whether N.C.G.S. § 126-5(g) applies to a position exempt by statute, we find guidance in the Administrative Code.
Title 25 of the Administrative Code, "State Human Resources," was enacted pursuant to the SHRA, which stated:
It is the intent and purpose of this Chapter to establish for the government of the State a system of personnel administration under the Governor, based on accepted principles of personnel administration and applying the best methods as evolved in government and industry. ... It is also the intent of this Chapter to make provisions for a decentralized system of personnel administration, where appropriate, and without additional cost to the State, with the State Human Resources Commission as the policy and rule-making body .
N.C.G.S. § 126-1 (emphasis added). Title 25, therefore, contains the rules and polices promulgated by the State Human Resources Commission. Subchapter 1H, "Recruitment and Selection" establishes specific requirements applicable to positions "otherwise" exempt from the SHRA. Notably, 25 N.C. Admin. Code 1H. 0630 provides that an employee, in a position that is subsequently exempt, must receive notice of the exempt designation ten days prior to the designation taking effect. "Having been promulgated pursuant to statutory authority, these enactments also have 'the effect of law.' " Amanini v. N.C. Dept. of Human Res., 114 N.C. App. 668, 678, 443 S.E.2d 114, 120 (1994) (citations omitted). 25 N.C. Admin. Code 1H. 0630 was promulgated by the State Human Resources Commission-the policy and rule-making body of the OSHR-and, therefore, has the effect of law as an administrative regulation.
Our Courts have employed the rules of statutory construction in interpreting administrative regulations. See Cole v. N.C. Dep't of Pub. Safety , --- N.C. App. ----, ----, 800 S.E.2d 708, 714 (2017). "Statutory interpretation properly begins with an examination of the plain words of the statute." Id . at ---, 800 S.E.2d at 714. The plain language of 25 N.C. Admin. Code 1H .0630 does not distinguish between statutorily exempt positions and policy-making/managerial exempt positions. The Administrative Code clarifies that exempt positions, although not subject to certain provisions in the SHRA, are subject to the notice provisions established by the Administrative Code.
Moreover, "words and phrases of a statute may not be interpreted out of context, but must be interpreted as a composite whole so as to harmonize with other statutory provisions and effectuate legislative intent, while avoiding absurd or illogical interpretations." Fort v. Cty. of Cumberland , 218 N.C. App. 401, 407, 721 S.E.2d 350, 355 (2012) (internal quotation marks and citations omitted). Construing the language of N.C.G.S. § 126-1 in harmony with 25 N.C. Admin. Code 1H. 0630, it is clear that an employee shall only be placed in an exempt position ten days after the employee receives notification of the position's exempt designation. Indeed, it would be an absurd and illogical interpretation that only individuals employed in exempt managerial and policymaking positions would be entitled to notice of their position's designation, whereas individuals in other exempt positions would not. Managerial/policymaking exempt positions are, by definition, authoritative in nature. See N.C.G.S. § 126-5(b)(2) (" 'Exempt managerial position' means a position delegated with significant managerial or programmatic responsibility that is essential to the successful operation of a State department, agency, or division[.]"); N.C.G.S. § 126-5(b)(3) (" 'Exempt policymaking position' means a position delegated with the authority to impose the final decision as to a settled course of action to be followed within a department, agency, or division, so that a loyalty to the Governor or other elected department head in their respective offices is reasonably necessary to implement the policies of their offices."). In contrast, the Diversity and Inclusion Director's duties were advertised as to:
work collaboratively to define statewide diversity and inclusion strategy, action plans, and goals and benchmarks for cabinet and council of state agencies; design diversity and inclusion initiatives, integrate and institutionalize those goals and benchmarks into OSHR's and the state's strategy; develop diversity and inclusion trainings to ensure policies are carried through practice; and work with staff and leadership to ensure successful implementation.
The responsibilities of Petitioner's job reveal the administrative nature of the position. It is an unreasonable inference that the General Assembly intended that employees serving in primarily administrative positions without managerial or final decision-making power would not be entitled to notification of their position's exempt status. The Administrative Code makes no distinction between specific exempt designations; its notice provision applies generally to employees in positions subsequently designated exempt. The language contained in the Administrative Code, read in harmony with the language of N.C.G.S. § 126-5(g), compels us to hold that OSHR failed to provide Petitioner legally effective notice.
OSHR contends that even assuming, arguendo , N.C.G.S. § 126-5(g) and 25 N.C. Admin. Code 1H .0630 applied to Petitioner, OSHR's violation was procedural in nature and, therefore, Petitioner is not entitled to retroactive reinstatement. See 25 N.C. Admin. Code 1J. 1316 (providing remedies for procedural violations). However, the violation was not merely procedural, as it resulted in the position's exempt designation not taking effect at the time Petitioner received notice. In other words, Petitioner's termination was based on her position's exempt designation; however, pursuant to N.C.G.S. § 126-5(g) and 25 N.C. Admin. Code 1H. 0630, the position was not actually exempt at the time of her termination. Therefore, Petitioner remained in a non-exempt position until 29 January 2017 - ten days after she received notification. At that time, Petitioner had reached career State employee status, as she would have worked from 20 January 2016 to 29 January 2017, and could not be terminated without just cause. N.C. Gen. Stat. § 126-35(a) (2017) ("No career State employee subject to the North Carolina Human Resources Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause."). As there is no dispute in the present case regarding whether OSHR had just cause to terminate Petitioner, reinstatement of her position and her career State employee status is the appropriate remedy. 25 N.C. Admin. Code 1J. 1312 ("Reinstatement from dismissal, suspension, or demotion may be ordered only upon a finding of lack of just cause as set forth in Rule .0604 of this Subchapter[.]").
2. Exempt Positions Amendments
The Exempt Positions Amendments added the following subsection to Chapter 126:
If the status of a position designated exempt pursuant to subsection (d)(1) of this section is changed and the position is made subject to the provisions of this Chapter, an employee occupying the position who has been continuously employed in a permanent position for the immediate 12 preceding months, shall be deemed a career State employee as defined by G.S. 126-1.1(a) upon the effective date of the change in designation.
2016 N.C. Sess. Law ch. 126, § 7. Thus, the Exempt Positions Amendments bestowed immediate career State employee status on employees who had not yet served twelve consecutive months in a non-exempt position.
Following the Governor's challenge to the Exempt Positions Amendments, the three-judge panel in Cooper I held that "the Exempt Positions Amendments violate the North Carolina Constitution because they leave the Governor 'with little control over the views and priorities of the officers' holding key decision-making positions in the executive branch." No. 16 CVS 15636, 2017 WL 1433245, at *13. Concluding "the Exempt Positions Amendments prevent the Governor from taking care that the laws are faithfully executed," the three-judge panel permanently enjoined the Exempt Positions Amendments on 17 March 2017. Id . at *14. The General Assembly subsequently repealed N.C.G.S. § 126-5(d)(2c), effective 17 May 2017. 2017 N.C. Sess. Law 6.
The relevant dates regarding the Exempt Positions Amendments in regard to the present case are as follows: Petitioner became a probationary employee January 2016; the Exempt Position Amendments became law December 2016; Cooper I order was entered March 2017; and the General Assembly repealed the Exempt Positions Amendments May 2017. Therefore, for purposes of this appeal, the issue would be whether the Exempt Positions Amendments conferred career State employee status on Petitioner at the time it became law. However, because we hold that Petitioner was a career State employee by virtue of OSHR's violation of its statutory notice requirement, we need not determine whether the Exempt Positions Amendments rendered Petitioner a career State employee.
C. The Governor's Authority under N.C.G.S. § 126-3(a) and N.C.G.S. § 126-5(c1)(6)
OSHR argues that the plain language of N.C.G.S. § 126-3(a) and N.C.G.S. § 126-5(c1)(6) is clear and unambiguous: the General Assembly placed OSHR in the Office of the Governor and, therefore, the Governor is authorized to exempt OSHR positions. We disagree.
N.C.G.S. § 126-3(a) provides:
There is hereby established the Office of State Human Resources (hereinafter referred to as "the Office") which shall be placed for organizational purposes within the Office of the Governor. Notwithstanding the provisions of North Carolina State government reorganization as of January 1, 1975, and specifically notwithstanding the provisions of Chapter 864 of the 1971 North Carolina Session Laws, Chapter 143A of the General Statutes, the Office of State Human Resources shall exercise all of its statutory powers in this Chapter, which shall be under the administration and supervision of a Director of the Office of State Human Resources (hereinafter referred to as "the Director") appointed by the Governor and subject to the supervision of the Commission for purposes of this Chapter. The salary of the Director shall be fixed by the Governor. The Director shall serve at the pleasure of the Governor.
N.C.G.S. § 126-3(a). Prior to a 2013 amendment, the first sentence of the statute established that OSHR "shall be placed for organizational purposes within the Department of Administration." N.C.G.S. § 126-3(a) (2013). In 2013, the General Assembly amended N.C.G.S. § 126-3(a) and placed OSHR within the Office of the Governor.
The Governor has the authority to designate positions in his own office exempt pursuant to N.C.G.S. § 126-5(c1)(6) :
Except as to the provisions of Articles 6 and 7 of this Chapter, the provisions of this Chapter shall not apply to:
....
(6) Employees of the Office of the Governor that the Governor, at any time, in the Governor's discretion, exempts from the application of the provisions of this Chapter by means of a letter to the Director of the Office of State Human Resources designating these employees.
N.C.G.S. § 126-5(c1)(6).
In the present case, we must determine whether, by virtue of the General Assembly's placement of OSHR in the Office of the Governor "for organizational purposes" in N.C.G.S. § 126-3(a), the Governor had the authority to designate Petitioner's position exempt pursuant to N.C.G.S. § 126-5(c1)(6). In construing N.C.G.S. § 126-3(a), we adhere to relevant rules of statutory interpretation.
"The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent." Dickson v. Rucho , 366 N.C. 332, 339, 737 S.E.2d 362, 368 (2013). Thus, "[t]he foremost task in statutory interpretation is 'to determine legislative intent while giving the language of the statute its natural and ordinary meaning unless the context requires otherwise.' " Carolina Power & Light Co. v. City of Asheville , 358 N.C. 512, 518, 597 S.E.2d 717, 722 (2004) (quoting Spruill v. Lake Phelps Vol. Fire Dep't, Inc. , 351 N.C. 318, 320, 523 S.E.2d 672, 674 (2000) ) (some internal quotation marks omitted). "Because the actual words of the legislature are the clearest manifestation of its intent, we give every word of the statute effect, presuming that the legislature carefully chose each word used." N.C. Dep't of Corr. v. N.C. Med. Bd. , 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009).
We must therefore first look at the plain language of N.C.G.S. § 126-3(a). OSHR's placement in the Office of the Governor is modified by the language "for organizational purposes." The General Assembly did not include OSHR in the Office of the Governor generally - it specified that its position was exclusively for "organizational purposes." This limited placement is evident in the General Assembly granting OSHR the authority to "exercise all of its statutory powers in ... Chapter [126.]" Moreover, N.C.G.S. § 126-3(a) provides that OSHR is "under the administration and supervision of a Director of the Office of State Human Resources" who "shall serve at the pleasure of the Governor." The subsection specifically identifies the Director of OSHR as serving at the pleasure of the Governor. If the General Assembly intended every employee of OSHR to serve at the pleasure of the Governor, its specific identification of the Director of OSHR would be extraneous. See Burgess v. Your House of Raleigh, 326 N.C. 205, 216, 388 S.E.2d 134, 140 (1990) (" '[A] statute must be construed, if possible, so as to give effect to every provision, it being presumed that the Legislature did not intend any of the statute's provisions to be surplusage.' ") (quoting Jolly v. Wright , 300 N.C. 83, 86, 265 S.E.2d 135, 139 (1980) ) (alteration in original).
Further, we find guidance in the rule of statutory interpretation "expressio unius est exclusio alterius , the expression of one thing is the exclusion of another." Baker v. Martin , 330 N.C. 331, 337, 410 S.E.2d 887, 890-91 (1991). Under this rule, we can infer that the General Assembly's designation of only the Director of OSHR was at the exclusion of all other OSHR employees.
This interpretation is reinforced by the General Assembly's removal of the Governor's authority to make OSHR exempt from the SHRA in Session Law 2016-126. It would be illogical for the General Assembly to remove the Governor's authority to designate OSHR positions exempt while allowing the Governor to retain the authority under N.C.G.S. § 126-5(c1)(6) to designate any OSHR position exempt. State ex rel. Cobey v. Simpson , 333 N.C. 81, 90, 423 S.E.2d 759, 763 (1992) ("To ascertain legislative intent with regard to the recent enactment, we presume that the legislature acted with full knowledge of prior and existing law and its construction by the courts.").
Further, OSHR's interpretation of N.C.G.S. § 126-3(a) is not reasonable, as it would eliminate certain OSHR employees' constitutionally protected property interest in State employment. Specifically, it would remove the vested property right of employees who had already reached career State employee status. While this result does not affect Petitioner personally, it further demonstrates the troublesome nature of OSHR's interpretation of N.C.G.S. § 126-3(a). It is well established that career State employees enjoy a property interest in continued employment. This property interest is created by state law, N.C. Gen. Stat. § 126-35(a), and is guaranteed by the Due Process Clauses of the Fifth and the Fourteenth Amendments to the United States Constitution." Brewington v. N.C. Dep't of Pub. Safety, State Bureau of Investigation , --- N.C. App. ----, ----, 802 S.E.2d 115, 133 (2017) ; see also Peace v. Emp't Sec. Comm'n , 349 N.C. 315, 321, 507 S.E.2d 272, 277 (1998) ("The North Carolina General Assembly created, by enactment of the State Personnel Act, a constitutionally protected 'property' interest in the continued employment of career State employees."). As such, a career State employee can only be terminated from employment for just cause. N.C.G.S. § 126-35(a). OSHR's interpretation of N.C.G.S. § 126-3(a) and N.C.G.S. § 126-5(c1)(6) could result in the Governor's ability to divest a career State employee of that employee's vested property interest without just cause. Such an interpretation is untenable.
In sum, we hold that the Governor did not have the authority under N.C.G.S. § 126-3(a) and N.C.G.S. § 126-5(c1)(6) to exempt Petitioner's position.
IV. Conclusion
We hold that the ALJ did not err in determining that Petitioner was a career State employee because she did not receive proper notice of her position's exempt designation ten days prior to her termination. As such, she was not serving in an exempt position on the day OSHR terminated her employment based on the Governor's authority to exempt positions within his Office. Moreover, the ALJ correctly determined that the Governor was not authorized to exempt Petitioner by virtue of the General Assembly's placement of OSHR in the Governor's Office. Therefore, Petitioner's exempt designation, pursuant to that statutory authority, was not permitted. Accordingly, we affirm the final decision of the ALJ.
AFFIRMED.
Report per Rule 30(e).
Judges HUNTER, JR. and HAMPSON concur.

The letter explained that "[g]enerally, this means that policies and rules relating to disciplinary action, separation, and appeals do not apply to positions designated as exempt managerial."

The Governor did not challenge the amendment limiting the number of positions the Governor was authorized to exempt.

That portion of the order was not appealed to this Court.